# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

FRANCISCO JIMENEZ,

        *Petitioner*,

vs.

BRIAN E. WILLIAMS,

        *Respondent*.

Case No. 2:14-cv-01916-APG-CWH

**ORDER**

This habeas matter under 28 U.S.C. § 2254 comes before me for a decision on the merits on the sole remaining ground.

*Background*

Petitioner Francisco Jimenez challenges his 2011 Nevada state conviction, pursuant to a guilty plea, on one count of conspiracy to commit robbery, two counts of robbery with the use of a deadly weapon, two counts of first-degree kidnapping, and one count of attempted murder with the use of a deadly weapon. ECF No. 14-19; Exhibit 19.

In the single ground that remains, Jimenez alleges that he was denied effective assistance of counsel because defense counsel advised him to plead guilty to the two counts of first-degree kidnapping despite there allegedly being insufficient evidence to support a conviction for kidnapping under Nevada law. Jimenez contends that the evidence was insufficient under the standards outlined in *Mendoza v. State*, 122 Nev. 267, 130 P.3d 176 (2006), because the movement of the victims allegedly was incidental to robberies with the use of a deadly weapon. ECF No. 7, at 3-6.

Jimenez unconditionally waived a preliminary hearing because he had reached a plea bargain with the State. ECF No. 14-2; Exhibit 2. The State therefore had no occasion to present any of the evidence that it had against Jimenez.

Petitioner was appointed different counsel on a motion to withdraw his plea. Replacement counsel summarized the State's evidence while alleging on Jimenez' behalf that pre-plea counsel had coerced Jimenez into pleading guilty despite having told him previously that the evidence was

insufficient on the kidnapping charges. ECF No. 14-15, at 4-5; Exhibit 15, at 3-4. Counsel repeated the factual summary on direct appeal, the State adopted the summary in its fast-track response, and the summary thus formed the uncontested factual backdrop for the decision of the state supreme court on direct appeal. ECF No. 14-21, at 8-9; Exhibit 21, at 7-8. ECF No. 14-22, at 5; Exhibit 22, at 4. Thereafter, Jimenez' post-conviction counsel – in seeking to establish ineffective assistance of pre-plea counsel due to alleged insufficiency of the evidence on the kidnapping charges – provided a more detailed summary of the State's evidence as reflected by the police reports and witness statements that then were available. ECF No. 14-26, at 4-7; Exhibit 26, at 3-6. Counsel repeated this more detailed summary almost in full on the post-conviction appeal. ECF No. 14-32, at 8-11; Exhibit 32, at 7-10. While the State did not adopt the factual recital, it did not challenge any of the specifics. *See* ECF No. 14-33, at 6; Exhibit 33, at 5.[1] As discussed further, *infra*, Jimenez' summary of the State's evidence formed the factual backdrop for the state supreme court's decision on the merits of the claim. *See* ECF No. 14-34, at 3; Exhibit 34, at 2. On federal habeas review, Jimenez has not challenged the accuracy of summaries of the State's evidence provided by his post-plea and post-conviction counsel that served as the factual backdrop for the decisions of the state courts.

Petitioner's summary reflected that the State would have presented evidence at a trial tending to establish the following with respect to the criminal episodes.[2]

On the evening of January 4, 2007, five Hispanic males entered a Quick Stop convenience store. Two of the males went to the counter ostensibly to purchase some beer. The two men then drew handguns and forced the employees at the counter to the floor. Another one of the males then walked

---

[1]The State's fast track response stated: "As Jimenez's conviction was the result of a guilty plea, the relevant facts are adduced above in the Statement of the Case."

[2]The Court makes no credibility findings or other factual findings regarding the truth or falsity of evidence or statements of fact in the state court. The Court summarizes same solely as background to the issues presented in this case, and it does not summarize all such material. No statement of fact made in describing statements, testimony or other evidence in the state court constitutes a finding by this Court. Any absence of mention of a specific piece of evidence or category of evidence in this overview does not signify that the Court has overlooked the evidence in considering petitioner's claims.

around the counter and bound the employees with zip ties. Meanwhile, another one of the males had been watching the door. He would "contact" customers as they entered the door by placing a handgun in their back and forcing them to the furthest aisle away from the door. Another male then would bind the customers with zip ties. ECF No. 14-32, at 8-9; Exhibit 32, at 7-8.

A second incident at an American Mini Market convenience store the next evening followed much the same pattern, although the summary description provided more detail. Five to possibly six Hispanic males entered the store and split up, with one male – believed by the police to be Jimenez – remaining by the door. Three employees were in the store. They were cashier Abraham Marquez, Luis Alvarado in the meat market, and Anjelica Alvarado at the main cash register. Two suspects robbed Luis Alvarado at gunpoint, and multiple suspects robbed Anjelica Alvarado also at gunpoint. The men escorted employees and customers at gunpoint into a back room of the store, made them lie down, and tied them up with zip ties. They did not bind Abraham Marquez and Anjelica Alvarado, however, apparently in the latter case because she was pregnant. ECF No. 14-32, at 9-11; Exhibit 32, at 8-10.

Similar to the other incident, the male by the door would escort any additional customers that came into the store to the back room at gunpoint. ECF No. 14-32, at 10; Exhibit 32, at 9.

Customer Abel Mata stated that he entered the American Mini Market to cash his paycheck. As he entered, one of the males pointed a gun at him, escorted him to the back room, and told him to lie down. Once he was on the floor, another male zip-tied his hands and feet. ECF No. 14-32, at 10-11; Exhibit 32, at 9-10.

The American Mini Market incident did not end well. Abraham Marquez shot two of the accomplices, mortally wounding Jesus Galindo Nunez. The police subsequently found Moises Araujo-Amaya a short distance from the store with a bullet wound in his buttocks. Araujo-Amaya told officers that he and the same accomplices from the American Mini Market incident, including Jimenez, had robbed the Quick Stop the evening before. Abraham Marquez sustained a grazing shot to his left shoulder. ECF No. 14-21, at 8-9; Exhibit 21, at 7-8. ECF No. 14-26, at 7; Exhibit 26, at 6.[3]

---

[3]The testimony and argument from the state court evidentiary hearing further reflected that:
(continued...)

-3-

The factual recitals in the state courts did not reflect that any of the customers who were moved to less visible locations within the stores at gunpoint and then bound were robbed.

Prior to his guilty plea, Jimenez was charged – as a principal, aider and abettor, and/or coconspirator – with a total of eighteen offenses. ECF No. 14-1; Exhibit 1. ECF No. 14-2, at 5; Exhibit 2, at 5.

The charged offenses included one count of conspiracy to commit three robberies as charged with respect to the Quick Stop and American Mini Market incidents. Count 1 in ECF No. 14-1; Exhibit 1.

With regard to the Quick Stop incident, Jimenez was charged with: (1) one count of burglary while in possession of a firearm; (2) two counts of robbery with the use of a deadly weapon for robberies respectively of Faris Yalda and Alma Luyon; and (3) four counts of first-degree kidnapping with the use of a deadly weapon for kidnappings respectively of Faris Yalda, Alma Luyon, Tomas Leon, and Martin Little. Counts 2 through 8 in ECF No. 14-1; Exhibit 1. No robberies were alleged as to Tomas Leon and Martin Little, and they thus appeared to be customers who were moved and bound during the incident rather than employees who were robbed.

With regard to the American Mini Market incident, Jimenez was charged with: (1) one count of burglary while in possession of a firearm; (2) one count of robbery with the use of a deadly weapon for a robbery of Abraham Marquez; (3) seven counts of first-degree kidnapping with the use of a deadly weapon for kidnappings respectively of Abraham Marquez, Luis Alvarado, Angelica Alvarado, Ana Marquz, Abel Mata, Bobby Klepper and Kevin Aden; and (4) one count of attempted murder with the use of a deadly weapon for an attempted murder of Abraham Marquez. Counts 9 through 18 in ECF No. 14-1; Exhibit 1. The only robbery charged for the American Mini Market incident was a robbery of store employee Abraham Marquez. Luis Alvarado and Angelica Alvarado also were store employees.

---

[3](...continued)
(1) the offenses were recorded on clear surveillance video showing every accomplice, including Jimenez; (2) Jimenez' other surviving accomplices also had implicated him in their statements; and (3) Jimenez had confessed on video to his involvement as the lookout manning the door with a gun and escorting employees and customers to a less visible location in the stores. ECF No. 14-28, at 6-8, 17-19, 27-30, 34, 37 & 44-48; Exhibit 28, at 7-9, 18-20, 28-31, 35, 38 & 45-49.

Abel Mata was not.

Prior to his plea, Jimenez faced extensive sentencing exposure on the eighteen counts with which he was charged under the law applicable to the January 2007 offenses.

At the outset, over and above the exposure on the underlying primary offenses on the robbery, first-degree kidnapping, and attempted murder charges, he faced exposure as well to a weapon enhancement carrying an additional consecutive sentence equal to the sentence imposed for the primary offense. *See* N.R.S. 193.165, as amended through 1995 Laws, ch. 624, § 1, at p. 1431.

Together with the consecutive weapon enhancement sentences on those charges under the foregoing provision, Jimenez faced possible sentencing to: (1) 1 to 6 years on the conspiracy to commit robbery count, pursuant to N.R.S. 199.480, as amended through 1999 Laws, ch. 320, § 1, at p. 1343; (2) 2 to 15 years on each one of the two counts of burglary while in possession of a firearm, pursuant to N.R.S. 205.060(4), as amended through 2005 Laws, ch. 126, § 1, at p. 416; (3) 2 to 15 years, along with an equal consecutive sentence, on each one of the three counts of robbery with the use of a deadly weapon, pursuant to N.R.S. 200.380; (4) life with the possibility of parole after 5 years or a definite term of 15 years with the possibility of parole after 5 years, along with an equal consecutive sentence, on each one of the eleven counts of first-degree kidnapping with the use of a deadly weapon, pursuant to N.R.S. 200.320; and (5) 2 to 20 years, along with an equal consecutive sentence, on the attempted murder with the use of a deadly weapon count, pursuant to N.R.S. 193.330(1)(a)(1), as amended through 1997 Laws, ch. 314, § 2, at pp. 1178-79.

Jimenez therefore faced a maximum possible sentencing exposure on the eighteen counts of consecutive determinate sentences totaling 146 years in turn further consecutive to 22 consecutive life sentences with parole eligibility after 5 years on each life sentence. If Jimenez had been convicted on all 11 counts of first-degree kidnapping with the use of a deadly weapon and sentenced as above, he would have had to serve 110 years on those counts alone before eligibility for a parole outside of prison walls, subject also to the determinate sentences on the remaining counts. Even as a young man, Jimenez thus faced a substantial risk of being imprisoned for the rest of his life on the charges pending prior to his plea.

Jimenez pled guilty instead to one count of conspiracy to commit robbery, two counts of robbery

with the use of a deadly weapon, two counts of first-degree kidnapping, and one count of attempted murder with the use of a deadly weapon. ECF No. 14-19; Exhibit 19.

He thus reduced his exposure to sentencing on: (1) two counts of robbery with the use of a deadly weapon rather than three such counts; and (2) only two counts of first-degree kidnapping – with no weapon enhancement – rather than eleven counts of first-degree kidnapping with the use of a deadly weapon. Moreover, the parties stipulated that only the sentences on the two counts of robbery with the use of a deadly weapon would run consecutively and that the sentences on the other counts would run concurrently with the robbery with use counts and with each other. Further, the State agreed that it would not argue for more than 25 years on the top end on the robbery with use counts. ECF No. 14-8, at 2-3 & 10-12; Exhibit 8, at 1-2 and exhibit thereto.

In the information to which Jimenez entered a guilty plea, *inter alia*: (1) the prior four counts of first-degree kidnapping with the use of a deadly weapon during the Quick Stop incident essentially were collapsed into a single count charging Jimenez with the first-degree kidnapping, without a weapon enhancement, of Faris Yald and/or Alma Luyon and/or Thomas Leon and/or Martin Little; and (2) the prior seven counts of first-degree kidnapping with the use of a deadly weapon during the American Mini Mart incident similarly essentially were collapsed into a single count charging Jimenez with the first-degree kidnapping, without a weapon enhancement, of Abraham Marquez and/or Luis Alvarado and/or Angelica Alvarado and/or Ana Marquez and/or Abel Mata and/or Bobby Klepper and/or Kevin Aden. ECF No. 14-8, at 10-12; Exhibit 8, exhibit thereto.[4] Jimenez thus was charged in each such first-degree kidnapping count with kidnapping persons who the coconspirators were not alleged to have robbed, including customers such as Abel Mata.

During the plea colloquy, Jimenez specifically admitted, *inter alia*, on the one count that he kidnapped Faris Yald and/or Alma Luyon and/or Thomas Leon and/or Martin Little and on the other that he kidnapped Abraham Marquez and/or Luis Alvarado and/or Angelica Alvarado and/or Ana Marquez and/or Abel Mata and/or Bobby Klepper and/or Kevin Aden. The district court judge substantially

---

[4] The two robbery with use counts from the Quick Stop incident similarly essentially were collapsed into a single count alleging robbery with the use of a deadly weapon of Faris Yalda and/or Alma Luyon. ECF No. 14-8, at 10; Exhibit 8, exhibit thereto.

-6-

tracked the language of the information on each count and then asked Jimenez whether he had committed those acts. He affirmed that he did. ECF No. 14-10, at 8-9; Exhibit 10, at 7-8.

Jimenez was sentenced on each count of robbery with the use of a deadly weapon to consecutive sentences of 28 to 150 months, or 56 to 300 months on each consecutive count. The sentences on the remaining charges, including the two counts of first-degree kidnapping, were imposed concurrently with the sentences on, respectively, one or the other robbery with use counts. The minimum sentences on the two first-degree kidnapping counts and on the one attempted murder with the use of a deadly weapon count ran several months longer than the minimum combined sentence on a count of robbery with the use of a deadly weapon. However, the longest top end sentences imposed in the judgment of conviction were on the robbery with use counts. ECF No. 14-19; Exhibit 19.

Jimenez challenged the conviction via motions to withdraw guilty plea, on direct appeal, and via a state post-conviction petition.

***Governing Law***

When the state courts have adjudicated a claim on the merits, the Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a "highly deferential" standard for evaluating the state court ruling that is "difficult to meet" and "which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170 (2011). Under this deferential standard of review, a federal court may not grant relief merely because it might conclude that the decision was incorrect. 563 U.S. at 202. Instead, under 28 U.S.C. § 2254(d), the court may grant relief only if the state court decision: (1) was either contrary to or involved an unreasonable application of clearly established law as determined by the United States Supreme Court; or (2) was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 563 U.S. at 181-88.

A state court decision is "contrary to" law clearly established by the Supreme Court only if it applies a rule that contradicts the governing law set forth in Supreme Court case law or if the decision confronts a set of facts that are materially indistinguishable from a Supreme Court decision and nevertheless arrives at a different result. *E.g.*, *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003). A state court decision is not contrary to established federal law merely because it does not cite the Supreme Court's opinions. *Id.* Indeed, the Supreme Court has held that a state court need not even be aware of

its precedents, so long as neither the reasoning nor the result of its decision contradicts them. *Id.* Moreover, "[a] federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous." 540 U.S. at 16. For, at bottom, a decision that does not conflict with the reasoning or holdings of Supreme Court precedent is not contrary to clearly established federal law.

A state court decision constitutes an "unreasonable application" of clearly established federal law only if it is demonstrated that the state court's application of Supreme Court precedent to the facts of the case was not only incorrect but "objectively unreasonable." *E.g., Mitchell*, 540 U.S. at 18; *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The state court decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall*, 134 S.Ct. 1697, 1702 (2014)(internal quotation marks omitted).

When a state court's factual findings are challenged, the "unreasonable determination of fact" clause of Section 2254(d)(2) controls on federal habeas review. *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id*. The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." 393 F.3d at 973.

Rather, AEDPA requires substantially more deference:

> . . . . [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence.

-8-

In *Hill v. Lockhart*, 474 U.S. 52 (1985), the Supreme Court held that the two-pronged test of *Strickland v. Washington*, 466 U.S. 668 (1984), applies to a challenge to a guilty plea based on ineffective assistance of counsel. 474 U.S. at 58. A petitioner seeking to set aside a plea due to ineffective assistance must demonstrate that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) the defective performance resulted in actual prejudice. 474 U.S. at 58-59.

On the performance prong, the question is not what counsel might have done differently but rather is whether counsel's decisions were reasonable from counsel's perspective at the time. In this regard, the court starts from a strong presumption that counsel's conduct fell within the wide range of reasonable conduct. *E.g., Beardslee v. Woodford*, 327 F.3d 799, 807-08 (9th Cir. 2003).

On the prejudice prong, as a general matter under *Strickland*, the petitioner must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *E.g., Beardslee*, 327 F.3d at 807-08. Application of this general principle to the specific context of a guilty plea leads to the requirement that the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

Under *Hill*, a challenge to the voluntariness of a plea may be based upon a claim of ineffective of assistance of counsel also in proceedings prior to the plea. As the Supreme Court observed:

> . . . . For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial. . . . . As we explained in *Strickland v. Washington, supra*, these predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the "idiosyncrasies of the particular decisionmaker." *Id.*, 466 U.S., at 695, 104 S.Ct., at 2068.

474 U.S. at 59-60. Thus, an error in failing to develop a meritorious defense may serve as a basis for overturning a plea and conviction if, viewed objectively, there is a reasonable probability that, but for

the error, the petitioner would not have pled guilty and would have insisted on going to trial.

While surmounting *Strickland*'s high bar is "never an easy task," federal habeas review is "doubly deferential" in a case governed by the AEDPA. In such cases, the reviewing court must take a "highly deferential" look at counsel's performance through the also "highly deferential" lens of § 2254(d). *Pinholster,* 563 U.S. at 190 & 202.

The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Id.* at 569.

## *Discussion*

As noted previously, in the sole ground remaining, Ground 1, Jimenez alleges that he was denied effective assistance of counsel because defense counsel advised him to plead guilty to the two counts of first-degree kidnapping despite there allegedly being insufficient evidence to support a conviction for kidnapping under Nevada law because the movement of the victims allegedly was incidental to robberies with the use of a deadly weapon. ECF No. 7, at 3-6.

Against the backdrop of Jimenez' summary of the State's evidence described previously herein, the Supreme Court of Nevada rejected the claim presented to that court on the following grounds:

> First, Jimenez contends that the district court erred by denying his claim that counsel was ineffective for advising him to plead guilty to two counts of first-degree kidnapping because there were no facts to support the charges. To prove ineffective assistance of counsel sufficient to invalidate a judgment of conviction based on a guilty plea, a petitioner must demonstrate that counsel's performance was deficient in that it fell below an objective standard of reasonableness, and resulting prejudice such that there is a reasonable probability that, but for counsel's errors, petitioner would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985); *Kirksey v. State*, 112 Nev. 980, 988, 923 P.2d 1102, 1107 (1996). We give deference to the court's factual findings if supported by substantial evidence and not clearly erroneous but review the court's application of the law to those facts de novo. *Lader v. Warden*, 121 Nev. 682, 686, 120 P.3d 1164, 1166 (2005).
>
> The record reveals that Jimenez and several coconspirators entered two convenience stores brandishing firearms, forced the customers into the back, ordered them to lie down, and restrained them using "zip-ties." The group robbed the stores and shot at an employee as they fled. Based upon these acts, Jimenez was charged with one count of conspiracy to commit robbery, two counts of burglary while in possession of a firearm, three counts of robbery with the use of a deadly weapon, one count of first-degree kidnapping, eleven counts of first-degree kidnapping with the use of a deadly weapon, and one count of attempted murder with

> the use of a deadly weapon. In exchange for the State's agreement to dismiss a majority of the counts and deadly weapon enhancements, Jimenez agreed to plead guilty to one count of conspiracy to commit robbery, two counts of robbery with the use of a deadly weapon, two counts of first-degree kidnapping, and one count of attempted murder. The parties stipulated that only two of the counts would run consecutively; moreover, Jimenez retained the right to argue for an eight-year minimum term and the State retained the right to argue for a twenty-five-year maximum term.
>
> The district court conducted an evidentiary hearing, wherein Jimenez testified that counsel discussed the case with him and informed him of possible defenses to the kidnapping charges, but advised him to plead guilty to reduce his exposure at sentencing. After considering the record and the testimony presented at the evidentiary hearing, the district court concluded that counsel was not ineffective. We agree. Jimenez fails to demonstrate that there were insufficient facts to support the kidnapping charges, and even assuming otherwise, he fails to demonstrate that it was unreasonable for counsel to advise him to plead guilty pursuant to the agreement rather than proceed to trial against the original charges. *See Hill*, 474 U.S. at 58–59. We conclude that the district court did not err by denying this claim.

ECF No. 14-34, at 2-4; Exhibit 34, at 1-3.

The state supreme court's rejection of Jimenez' ineffective-assistance claim was neither contrary to nor an objectively unreasonable application of clearly established federal law.

At the outset, petitioner has not challenged on federal habeas review the state supreme court's description of the underlying evidence against Jimenez, which necessarily was premised upon the detailed summary that Jimenez' post-conviction counsel presented to the state courts. The state supreme court's summary accordingly is entitled to a presumption of correctness as reflecting the evidence that would have been available to the State at trial.[5]

Moreover, the Supreme Court of Nevada is the final arbiter of Nevada state law. The court's implicit rejection of Jimenez' state law premises as to how *Mendoza v. State*, 122 Nev. 267, 130 P.3d 176 (2006), and related state law authority should apply to the facts of his case is – to that extent – unassailable on federal habeas review.

In all events, Jimenez' reliance upon *Mendoza* and related Nevada case authority to establish the insufficiency of the evidence on the facts presented under the federal law standard in *Jackson v.*

---

[5]*See, e.g., Sims v. Brown*, 425 F.3d 560, 563 n.1 (9th Cir. 2005).

*Virginia*, 443 U.S. 307 (1979), is misplaced.

In *Mendoza*, the state supreme court clarified the relationship under Nevada law between kidnapping and other offenses involving movement or restraint of a victim:

> We now clarify that movement or restraint incidental to an underlying offense where restraint or movement is inherent, as a general matter, will not expose the defendant to dual criminal liability under either the first- or second-degree kidnapping statutes. However, where the movement or restraint serves to substantially increase the risk of harm to the victim over and above that necessarily present in an associated offense, *i.e.*, robbery, extortion, battery resulting in substantial bodily harm or sexual assault, or where the seizure, restraint or movement of the victim substantially exceeds that required to complete the associated crime charged, dual convictions under the kidnapping and robbery statutes are proper.[FN19] Also, . . . dual culpability is permitted where the movement, seizure or restraint stands alone with independent significance from the underlying charge.
>
> > [FN19] This acknowledges that first-degree kidnapping is not committed unless the underlying purpose is robbery, extortion or sexual assault, infliction of substantial bodily harm or murder. . . . .

122 Nev. at 274-75 & n.19, 130 P.3d at 180-81 & n.19.

The state high court outlined the facts in *Mendoza* earlier in the opinion and thereafter applied the foregoing standards to those facts in the following manner:

> Evidence at trial indicated that Mendoza and two cohorts entered Mr. Canon's residence with guns, tied him up, looted the premises and robbed other members of the Canon family. During these robberies, Mr. Avalos, an employee of Mr. Canon, arrived at the residence to retrieve his paycheck. The intruders seized Mr. Avalos, took him inside, severely beat him, and took his keys and wallet. The criminal information filed in the district court included individual charges of robbery with the use of a deadly weapon of Mr. Canon and Mr. Avalos, and individual charges of first-degree kidnapping with the use of a deadly weapon in connection with those robberies. Ultimately, the jury convicted Mendoza of robbery as to both Mr. Canon and Mr. Avalos, and convicted Mendoza of kidnapping Mr. Avalos. It acquitted Mendoza on the kidnapping charges concerning Mr. Canon.
>
> . . . . .
>
> The evidence against Mendoza justified the district court's instructions on both of the alleged kidnapping offenses. Interestingly, the jury acquitted Mendoza of kidnapping Canon, the case in which physical restraint was clearly shown. As to the kidnapping conviction involving the seizure and restraint of Jose Avalos in Canon's residence, the seizure and restraint resulted in increased danger and injury to Avalos, thus falling within the purview of instruction 25 [which the state supreme court found to not contain error]. In short, Avalos was seized, physically

restrained, assaulted and then robbed.

122 Nev. at 271 & 275, 130 P.3d at 178 & 181 (footnote omitted).

Nevada cases applying the *Mendoza* line drawn by the state supreme court have upheld jury verdicts in contexts involving increased risk of harm to the victim resulting from moving a victim from a more public location into a more secluded one, from guarding the victim at gunpoint, and/or from movement or restraint that otherwise substantially exceeded the movement or restraint necessary to complete the robbery.[6] Nevada appellate courts have applied the established rule that whether the movement or restraint of the victim is incidental to the associated offense and whether the risk of harm is substantially increased thereby are questions of fact to be determined by the trier of fact in all but the

---

[6]*See, e.g., Guerrina v. State*, 419 P.3d 705, 708 & 710-11 (Nev. 2018)(the defendant, *inter alia*, accosted the victim outside a store and forced her to accompany him into the more secluded store, where he demanded her wallet and cell phone); *Hobson v. State*, 2018 WL 2733965, No. 71419, at *1 & *4 (Nev., June 1, 2018)(unpublished)(in three restaurant robberies, the defendant and/or his accomplice forced the employee victims to remain in, or return to, each restaurant and then held them at gunpoint while the manager opened the safe); *Stewart v. State*, 393 P.3d 685, 686 & 688 (Nev. 2017)(the defendant and his accomplice accosted the victim as she was entering her apartment, held her at gunpoint, forced her at gunpoint to allow them into the apartment, and made her lie face down on the floor in the back bedroom and guarded her at gunpoint while they ransacked her apartment); *Estall v. State*, 2016 WL 5400164, No. 67174, at *1 (Nev., Sept. 16, 2016)(unpublished)(the defendant and his accomplice attacked the victim as he turned to reenter his home, forced him into the residence, covered his mouth and forced him to the floor, and moved him at gunpoint to the garage where a safe was located); *Hover v. State*, 2016 WL 699871, No. 63888, at *1 & *6 (Nev., Feb. 19, 2016)(unpublished)(the defendant moved the victim from the front door of his residence to another bedroom where he was taped to a chair, in a situation where the movement was not necessary to complete the robbery, which occurred instead in the kitchen); *Gonzales v. State*, 354 P.3d 654, 656-57 & 664-66 (Nev. App. 2015)(the accomplices forced the victim at gunpoint from an open garage visible to her neighbors into the house and thereafter moved her from room to room despite her not knowing where her husband had stored his weapons, when the robbery instead could have been accomplished simply by detaining her in the garage while they searched the house); *Pascua v. State*, 122 Nev. 1001, 1003-06, 145 P.3d 1031, 1032-34 (Nev. 2006)(after robbing the victim of his wallet and obtaining the combination to his safe while in his kitchen, the defendant and her accomplices dragged the victim from the kitchen to his bedroom and restrained him on his bed, thereby, *inter alia*, lessening his chances of being seen by neighbors or escaping). The Court notes that the issue here does not involve retroactive application of a statutory change but instead is one of the Nevada appellate courts' application of the 2006 *Mendoza* decision. Precedents from subsequent to Jimenez' 2010 plea thus constitute relevant authority, particularly as the relevant cases from 2006 forward are consistent in their application of Nevada law.

-13-

clearest of cases.[7] In cases affirming convictions against challenges to the sufficiency of the evidence of kidnapping involving victim movement and/or restraint as described above, Nevada appellate courts have concluded that the factual pattern exhibited in the case did not present one of the clearest cases in which the jury's verdict must be deemed unreasonable.[8]

In the present case, during the Quick Stop incident, employees were forced at gunpoint to the floor, where they were less visible to the public, and then bound. Customers further were taken at gunpoint from the entry threshold of the store to the furthest aisle away from the door, where they too were less visible to the public, and where they also were bound. *See* text, *supra*, at 2-3. Neither the movement nor the restraint was necessary for the robbery itself. Jimenez and his accomplices simply could have displayed their weapons, directed the employee or employees at the cash register to give them the money, and left the store.

During the American Mini Market incident, employees and customers were moved at gunpoint from more visible positions out in the customer service area of the store to the seclusion of a back room, were forced to the floor in that secluded area, and all but two of them were bound. Jimenez further escorted any new incoming customers at gunpoint from the publicly visible entry threshold to the seclusion of the same back room, where they similarly were bound. *See* text, *supra*, at 3. Once again, neither the movement nor the restraint was necessary for the robbery itself. Jimenez and his accomplices simply could have displayed their weapons, directed the employees at the cash registers to give them the money, and left the store.

Based on the foregoing, a rational trier of fact, after viewing the evidence in the light most favorable to the prosecution, could find that the kidnappings were not merely incidental to the robbery or robberies under the standards outlined in *Mendoza*. A rational trier of fact could conclude in particular that the kidnappings created an increased risk of harm to the victims resulting from moving the victims from more public locations to more secluded ones, from guarding the victims at gunpoint, and from the fact that the movement and restraint otherwise substantially exceeded the movement or

---

[7]*E.g., Guerrina*, 419 P.3d at 710; *Pascua*, 122 Nev. at 1005 n.6, 145 P.3d at 1033 n.6.

[8]*E.g., Guerrina*, 419 P.3d at 711.

-14-

restraint necessary to complete the robberies. The new incoming customers accosted at the entry threshold of the stores, such as Abel Mata at the American Mini Market, in particular were much like the individual in *Mendoza* who was accosted at the doorway of the home and forced inside at gunpoint and restrained. A comparison between the underlying facts in the present case and the facts in *Mendoza* thus undercuts – rather than supports – Jimenez' position in this case.[9]

Moreover, in both incidents, Jimenez and his accomplices moved and bound multiple people, in particular customers, who were not themselves robbed and as to which no robbery charges were filed. Jimenez and his accomplices definitely substantially increased the risk of harm presented by their actions with each person "contacted," moved out of public view at gunpoint to a more secluded area, and bound. Under petitioner's apparent view of *Mendoza*, he and his accomplices could have moved or restrained an unlimited number of people – without any additional criminal culpability or sentencing exposure – so long as they were robbing someone at some point during the overall incident. *Mendoza* does not support such a result, and Jimenez cites no apposite post-*Mendoza* decision that makes a holding that supports such a result.

Indeed, a conclusion under the *Mendoza* analysis that a kidnapping is incidental to a robbery does not necessarily lead to a conclusion that a kidnapping otherwise did not occur. Rather, the goal of the *Mendoza* analysis is to determine those situations where the state legislature could not have intended to impose a double punishment where a robbery *and* a kidnapping *both* in fact *did* occur, at least by the literal terms of the Nevada kidnapping statute. *See Mendoza*, 122 Nev. at 272-73, 130 P.3d at 179; *see also Wright v. State*, 94 Nev. 415, 416-18, 581 P.2d 442, 443-44 (1978)(further discussion on the point). Jimenez was charged with kidnapping two individuals at the Quick Stop who he was not charged also of robbing; and he was charged with kidnapping six individuals at the American Mini Market who he was not charged also of robbing. Under both the pre-plea and plea charging documents, there could not be a double punishment imposed for both robbery and kidnapping as to those eight individuals. There

---

[9]And as the Supreme Court of Nevada noted in *Mendoza*, it was the jury that acquitted Mendoza of kidnapping the owner inside the home. The state supreme court thus had no occasion to hold, and did not hold, that the evidence was not legally sufficient for a jury to convict Mendoza of kidnapping the home owner as well.

can be no double punishment for both robbery and kidnapping when a defendant is charged with kidnapping a person who he is not charged of robbing. Nor did the underlying evidence suggest that Jimenez and his accomplices robbed all eight of these individuals as a matter of fact, as opposed to instead only Luis Alvarado and Angelica Alvarado within that group of eight.[10]

In all events, as discussed previously, application of the *Mendoza* analysis would not lead to a conclusion that a rational juror could not find Jimenez guilty of both robbery and kidnapping as to all eleven victims, including the three who Jimenez was alleged to have also robbed. There was sufficient evidence for a jury to find Jimenez guilty of kidnapping under the *Mendoza* analysis, as to all eleven first-degree kidnapping charges with weapon enhancements.

Against that backdrop, the state supreme court did not objectively unreasonably apply *Hill*, *Strickland*, *Jackson*, or other clearly established federal law as determined by the United States Supreme Court when it rejected petitioner's claim. Defense counsel properly advised Jimenez that he potentially could be found guilty of first-degree kidnapping with the use of a deadly weapon – in a situation where he faced eleven such counts with a maximum potential sentencing exposure of 22 consecutive life sentences, with an aggregate parole eligibility outside of a prison in that event only after 110 years.[11] That clearly was correct advice on the facts of Jimenez' case under *Mendoza* and following cases.

Jimenez nonetheless suggests that defense counsel's advice to him at the time of his plea was incorrect because counsel represented to the prosecution during plea negotiations that the evidence was insufficient under *Mendoza* to convict him for kidnapping. Defense counsel wrote the following letter prior to an initial date scheduled for a preliminary hearing:

---

[10]The Court notes that, for there to be sufficient evidence to support the two kidnapping counts in the charging document to which Jimenez pled guilty, there would need to be sufficient evidence as to only one of the four victims charged in the alternative in the Quick Stop incident and as to only one of the seven victims charged in the alternative in the American Mini Market incident. *See* text, *supra*, at 6. Given the kidnappings of multiple customers at both stores – such as of Abel Mata at the American Mini Market – who clearly were not themselves robbed, Jimenez indisputably cannot demonstrate insufficiency of the evidence as to the two kidnapping counts to which he actually pled.

[11]Determinate sentences on the other counts with which he was charged potentially could have added another 146 years of maximum time. *See* text, *supra*, at 4-5.

> Dear Ms. Keenan:
>
> Thank you for returning my call this afternoon regarding Mr. Jimenez's case set for preliminary hearing on August 10, 2010.
>
> In formulating your offer, please review the attached Motion to Suppress Statements I intend to file in the event we cannot negotiate in this matter. It is our position consistent with the Nevada Supreme Court's decision in Dewey v. State, 483 Nev. 490 (Nev. 2007) that Mr. Jimenez was not properly advised of his Miranda warnings as mandated in the Dewey opinion.
>
> Additionally, we do not believe the State can prove any kidnapping charges in light of the Nevada Supreme Court's decision in Mendoza v. State, 122 Nev. 267 (Nev. 2006). The Court in Mendoza holds that "to sustain convictions for both robbery and kidnapping arising from the same course or conduct, any movement or restraint must stand alone with independent significance from the act of robbery itself, create a risk of danger to the victim substantially exceeding that necessarily present in the crime of robbery, or involve movement, seizure or restraint substantially in excess of that necessary to its completion." Id. at 275. The State has no such evidence against Mr. Jimenez.

ECF No. 7, at 61.

Defense counsel's argument in a position letter as part of plea negotiations does not establish how *Mendoza* applied to the facts of Jimenez' case. Defense counsel was doing what a good defense lawyer is supposed to do, which is present a strong face to the prosecution while providing a realistic appraisal of the case to the defendant himself in private. Nothing in counsel's position letter could override the strong evidence against Jimenez. Nothing in counsel's position letter could establish how *Mendoza* actually applied to his case. Nothing in the letter established that the evidence that he faced was insufficient to convict him of eleven counts of first-degree kidnapping with the use of a deadly weapon, with potential exposure to 22 consecutive life sentences, much less that the evidence was insufficient to convict him of the two consolidated counts to which he pled.

The sole remaining ground therefore does not provide a basis for federal habeas relief.[12]

---

[12]The Court expresses no opinion as to whether Jimenez' admission of his guilt of first-degree kidnapping during the plea colloquy forecloses the claim presented, pursuant to, *inter alia*, *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). *See* ECF No. 14-10, at 7-8; Exhibit 10, at 6-7. The Court has assumed *arguendo* that a claim that the facts admitted during the colloquy allegedly did not establish the crime in question is not barred by an admission of guilt as to those facts. *Cf. Class v. United States*, 138 S.Ct. 798, 804-05 (2018). In all events, the record presented to the state
(continued...)

**IT THEREFORE IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** on the merits and that this matter shall be **DISMISSED** with prejudice.

**IT FURTHER IS ORDERED** that a certificate of appealability is **DENIED**, as jurists of reason would not find either the prior procedural holdings as to Grounds 2 and 3 or the dismissal herein of Ground 1 on the merits to be debatable or wrong, for the reasons assigned in the prior orders[13] and herein.

The Clerk of Court shall enter final judgment accordingly, in favor of respondents and against petitioner, dismissing this action with prejudice.

DATED: July 16, 2018.

                                              ANDREW P. GORDON
                                              United States District Judge

---

[12](...continued) courts when the claim was decided on the merits established that petitioner could have been convicted by a jury of first-degree kidnapping if the matter instead had proceeded to trial.

[13] ECF No. 8, at 2; ECF No. 18, at 3.